UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VAUGHN HILL,

Petitioner,

v.

CASE NO. 4:10-CV-14674
JUDGE MARK A. GOLDSMITH
MAGISTRATE JUDGE PAUL J. KOMIVES

PAUL KLEE,

Respondent[1].

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

| | | | |
|---|---|---|---|
| I. | | RECOMMENDATION: | 2 |
| II. | | REPORT: | 2 |
| | A. | *Procedural History* | 2 |
| | B. | *Factual Background Underlying Petitioner's Conviction* | 5 |
| | C. | *Standard of Review* | 7 |
| | D. | *Biased Trier of Fact (Claim I)* | 10 |
| | | 1. *Legal Standard* | 10 |
| | | 2. *Analysis* | 12 |
| | E. | *Involuntary Waiver of Jury Trial (Claim II)* | 13 |
| | | 1. *Legal Standard* | 13 |
| | | 2. *Analysis* | 14 |
| | F. | *Evidence (Claim III)* | 15 |
| | | 1. *Legal Standard* | 15 |
| | | 2. *Analysis* | 16 |
| | G. | *Failure to Disclose Deal/Perjured Testimony (Claim V)* | 17 |
| | | 1. *Legal Standard* | 17 |
| | | 2. *Analysis* | 19 |
| | H. | *Denial of Confrontation (Claim VI)* | 21 |
| | | 1. *Legal Standard* | 21 |
| | | 2. *Analysis* | 24 |
| | I. | *Ineffective Assistance of Counsel* | 25 |
| | | 1. *Clearly Established Law* | 25 |
| | | 2. *Analysis* | 28 |
| | J. | *Recommendation Regarding Certificate of Appealability* | 30 |
| | | 1. *Legal Standard* | 30 |
| | | 2. *Analysis* | 31 |
| | K. | *Conclusion* | 32 |
| III. | | NOTICE TO PARTIES REGARDING OBJECTIONS: | 32 |

---

[1]By order entered this date, Paul Klee has been substituted in place of Steven Rivard as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. and should deny a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Vaughn Hill is a state prisoner, currently confined at the St. Louis Correctional Facility in St. Louis, Michigan.

2.      On September 1, 2006, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a bench trial in the Muskegon County Circuit Court.  On September 29, 2006, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, a single claim:

> WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED CLEAR HARMFUL ERROR IN ADMITTING HEARSAY STATEMENTS IDENTIFYING DEFENDANT UNDER THE PRESENT SENSE IMPRESSION EXCEPTION WITHOUT CORROBORATING EVIDENCE THAT THE UNDERLYING EVENT OCCURRED.

The court of appeals found no merit to petitioner's claim, and affirmed his conviction and sentence. *See People v. Hill*, No. 273825, 2008 WL 161997 (Mich. Ct. App. Jan. 17, 2008) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal this issue to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Hill*, 480 Mich. 1190, 747 N.W.2d 299 (2008).

2

5.      On January 27, 2009, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims (as set forth in his application for leave to appeal in connection with that motion):

I.      THE TRIAL JUDGE WAS OBLIGATED TO EITHER *SUA SPONTE* DISQUALIFY HIMSELF OR INFORM THE DEFENDANT OF HIS RIGHT TO HAVE A DIFFERENT JUDGE SIT AS A TRIER OF FACT WHERE THE TRIAL JUDGE PRESIDED AT A CO-DEFENDANT'S TRIAL RESULTING IN CONVICTION, AND WHO WAS DIRECTLY INFLUENCED BY EVIDENCE VIEWED AND CONSIDERED IN THAT CASE.   HENCE, DEFENSE COUNSEL'S FAILURE TO MOVE TO DISQUALIFY JUDGE HICKS OR INFORM DEFENDANT OF HIS RIGHT TO HAVE A DIFFERENT JUDGE SIT AS A TRIER OF FACT WAS INEFFECTIVE ASSISTANCE OF COUNSEL THAT PREJUDICED THE DEFENSE.

II.     DEFENDANT'S WAIVER OF A JURY TRIAL WAS NOT VOLUNTARY AND VIOLATED DUE PROCESS WHERE DEFENDANT DID SO ONLY BECAUSE DEFENSE TRIAL COUNSEL REPRESENTED TO HIM THAT HE COULD NOT GET A FAIR TRIAL BEFORE A JURY OF HIS PEERS WHERE THE PROSECUTOR WAS GOING TO BE ALLOWED TO BRING IN EVIDENCE CONCERNING DEFENDANT'S PRIOR DRUG BUSINESS AND GANG AFFILIATION.   DEFENSE COUNSEL'S ADVICE WAS CONSTITUTIONALLY DEFICIENT BECAUSE THE TRIER OF FACT WAS STILL LEFT WITH A MORASS OF EVIDENCE OF DEFENDANT'S PURPORTED BAD ACTS, DID IN FACT CONSIDER THEM, AND WAS FULLY AWARE OF DEFENDANT'S ALLEGED CRIMINAL BACKGROUND.

III.    DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL BY THE ERRONEOUS ADMISSION OF EXPERT OPINION EVIDENCE WHEN AN OFFICER INVOLVED IN THIS CASE OFFERED TESTIMONY AS SUBSTANTIVE PROOF OF DEFENDANT'S GUILT REGARDING DEFENDANT'S ALLEGED PARTICIPATION IN THE ADMINISTRATION OF GANG AND DRUG ACTIVITIES, AND WHICH EVIDENCED A WILLINGNESS TO EXCHANGE DEBTS BETWEEN DRUG DEALERS, INCLUDING DEBTS TO PERFORM MURDER. HENCE, TRIAL COUNSEL'S FAILURE TO OBJECT TO THIS INADMISSIBLE AND PREJUDICIAL TESTIMONY AND ARGUMENT DEPRIVED DEFENDANT OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

3

IV.    DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL AND SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO OBJECT ON HEARSAY AND RELEVANCY GROUNDS THAT DEFENDANT WAS KNOWN TO BE A MEMBER OF THE SAME GANG THE PROSECUTION CLAIMED HE WAS A MEMBER OF, WHERE COUNSEL FAILED TO OBJECT TO NUMEROUS REFERENCES TO DEFENDANT'S PURPORTED INVOLVEMENT IN DRUG TRAFFICKING AND GANG ACTIVITY, AND WHERE TRIAL DEFENSE COUNSEL OPENED THE DOOR TO HIGHLY PREJUDICIAL TESTIMONY CONCERNING THE GANG'S INVOLVEMENT IN MULTIPLE SHOOTINGS AND MURDER.

V.    DEFENDANT WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL, DUE PROCESS OF LAW, AND CONFRONTATION, THROUGH GOVERNMENT MISCONDUCT, WHICH CONSISTED OF A FAILURE TO DISCLOSE, DIRECTLY OR INDIRECTLY THROUGH ITS WITNESSES, THE EXTENT OF A DEAL WITH A KEY PROSECUTION WITNESS, AND ELICITATION AND UTILIZATION OF FALSE OR MISLEADING TESTIMONY.

VI.    DEFENDANT WAS DENIED DUE PROCESS OF LAW AND HIS RIGHT TO CONFRONTATION BY THE TRIAL COURT'S ERRONEOUS DECISION TO ALLOW HEARSAY TESTIMONY WHICH WAS INADMISSIBLE EITHER AS A STATEMENT BY A CO-CONSPIRATOR OR AS A STATEMENT AGAINST PENAL INTEREST; DEFENDANT WAS CONVICTED ON THE BASIS OF INADMISSIBLE HEARSAY.

VII.    DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL, AND WAS PREJUDICED BY APPELLATE COUNSEL'S OMISSIONS THEREIN. THEREFORE, DEFENDANT IS ENTITLED TO RELIEF FROM JUDGMENT OR AN EVIDENTIARY HEARING.

The trial court initially denied the motion based on petitioner's failure to comply with the procedural requirements of the rules governing motions for relief from judgment.  On April 20, 2009, the trial court entered an order granting petitioner's motion for reconsideration, and denying the motion on the merits.  *See People v. Hill*, No. 05-52634-FC (Muskegon County, Mich., Cir. Ct. Apr. 20, 2009). The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for

leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Hill*, 486 Mich. 1043, 783 N.W.2d 341 (2010); *People v. Hill*, No. 293812 (Mich. Ct. App. Oct. 23, 2009).

6.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on November 23, 2010.  As grounds for the writ of habeas corpus, he raises the seven claims that he raised in his motion for relief from judgment.  On April 11, 2011, petitioner, through counsel, filed an amended petition raising the identical claims.

7.      Respondent filed his answer on June 7, 2011.  He contends that petitioner's claims are without merit.

8.      Petitioner, through counsel, filed a reply to respondent's answer on July 18, 2011.

B.      *Factual Background Underlying Petitioner's Conviction*

In September, 2003, through September, 2004, the United States Attorney's Office, Drug Enforcement Agency, Michigan State Police, and Grand Rapids Police Department, among others, conducted joint investigations regarding the operations and criminal activity of two competing drug/street gangs operating in the Grand Rapids area.

The first gang of interest was known as the Lafayette Street Gang (a.k.a. Lafayettes) whose alleged leader was Darrell Mitchell (a.k.a. D'Mitch, Dad). The second gang was known as the Union and Thomas Street Gang (a.k.a. U & Ts) of which the victim Aldul Jabar Dean was allegedly a member.

Petitioner was known under the street name "Weewee". Petitioner was a known associate of the Lafayette's leader Darrell Mitchell. The subsequent investigation into the murder of Dean revealed that this was the third attempt on the victim's life. There were two other shootings

occurring on June 15, 2002, and November 19, 2002, respectively, in Grand Rapids. Following each shooting, the victim identified Darrell Mitchell, who is a leader of the Lafayette gang and close friend and associate of petitioner as possibly behind it.

As a result of these shootings a Lafayette gang member named Jerry Boss was convicted of Accessory After the Fact. A second Lafayette implicated in these shootings named Johnny Greer died before being brought to trial. Petitioner was not implicated or charged in connection with either of these shootings.

Either after the first or second shooting, the victim confronted both Darrell Mitchell and petitioner at a Grand Rapids bar/bowling alley named the Howlin' Moon. The victim had been drinking and pulled two handguns on Darrell Mitchell and petitioner and yelled, "[y]ou ho ass niggers keep shooting at me," and went on to call the group several more derogatory names. The victim thereafter called his girlfriend upset and crying over what he had done and in fear of what might happen next. A person who witnessed this event, and who knew the victim and the others present, recognized that the victim's confrontation would cause bad consequences down the road.

On Sunday, December 15, 2002, the victim came to Muskegon from Grand Rapids without his guns (as a favor to a female friend). He and some friends decided to go out that night to the Rush Street bar in Muskegon Heights. Late that same evening, petitioner and two associates, Deandray Fisher (a.k.a. D'Black) and Jason Darnell Lotts, also came to Muskegon from Grand Rapids and went to the same bar. The victim saw them inside Rush Street. The victim and his group left the bar and petitioner and his group followed them out of the bar seconds later. The victim and his entourage invited two friends, William Davis (a.k.a. Hollywood) and Floria McKinney (a.k.a. Flo), to follow them to a friends's house. The victim and his entourage then got into the black Cadillac

6

Escalade they were driving that night while petitioner and his two companions got into the black SUV (GMC Yukon) with tinted windows that they were driving that night. The victim's vehicle left and drove a short distance to a friend of a friend's house. Petitioner's black Yukon followed, actually jumping between the victim's Escalade and Hollywood's vehicle. When the victim parked at the friend's house, he saw petitioner's Yukon drive by them slowly, causing him to exclaim, "there go Weewee and them". Upon saying this, the victim immediately jumped out of his Escalade. Jason Darnell Lotts, who had been with petitioner and Deandray Fisher at Rush Street, walked up to the victim from around the corner and shot the victim four times, including once in the head. After shooting the victim, Lotts jogged away from the scene until picked up by petitioner's black Yukon a short distance from the shooting. Two eyewitnesses identified Lotts as the shooter and they were able to relate what the victim had exclaimed immediately before he was shoot to death, to wit: "there go Weewee and them". Although Jason Lotts was positively identified as being the shooter, none of the witnesses were able to identify any of the other people that were in the black Yukon. The Yukon was later found to be registered to petitioner's grandmother, Earnestine Hill. After an investigation, police charged Jason Darnell Lotts, petitioner, and Darrell Mitchell with the murder. Evidence included, inter alia, eyewitness statements, law enforcement assistance out of Grand Rapids, security videos obtained from Rush Street (showing the two groups entering and leaving at about the same time), and fingerprint evidence.

C.    *Standard of Review*

       Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

However, "[i]n order for a federal court to find a state court's application of [Supreme Court]

precedent 'unreasonable,' the state court's decision must have been more than incorrect or

erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.  As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).  Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).  The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131

S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Biased Trier of Fact (Claim I)*

1.   *Legal Standard*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29. Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner. *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id*. (internal quotation omitted). The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal quotation omitted); *see also, Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also, Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a

11

stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune."
*Id*. at 556.  Although *Liteky* was decided on the basis of the federal recusal statute, it provides
guidance for resolving habeas claims of judicial bias.  *See Maurino*, 210 F.3d at 645; *Poland v.
Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

      2.    *Analysis*

      Petitioner contends that the judge should have recused himself because he presided over the
trial of petitioner's co-defendant. However, petitioner does not point to any instances where the
judge had shown prejudice or bias as to petitioner's guilt or innocence as a result of presiding over
the co-defendants's jury trial. The inquiry on habeas review is an objective one. The Court asks not
whether the judge is actually, subjectively biased, but whether the average judge in his position is
likely to be neutral, or whether there is an unconstitutional potential for bias. *See Caperton v. A.T.
Massey Coal Co., Inc.*, 556 U.S. 868, 881 (2009). A judge is not required to recuse himself based
on the "subjective view of a party" regardless of how strongly that view is held. *Rockwell v. Palmer*,
559 F. Supp. 2d 817, 832 (W.D. Mich. 2008)(quoting *Browning v. Foltz,* 837 F.2d 276 (2011)).

      Petitioner claims that the trial judge was "clearly not impartial," but fails to show how the
judge had acted with bias towards him. Petitioner points to parts of the trial where the judge had
mentioned his co-defendant's trial as evidence of bias, but does not address any point in the trial
where the judge had used information he had learned from the co-defendant's trial, which would
have been inadmissable in petitioner's trial,  to his detriment. Not only is it petitioner's burden to
show actual bias, and prejudice from said bias, but petitioner must show that the alleged bias of the
judge was severe enough to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th
Cir. 1995). Because petitioner has failed to point to any actual bias shown by the trial judge,

petitioner is not entitled to habeas relief on this claim.

E.      *Involuntary Waiver of Jury Trial (Claim II)*

    1.      *Legal Standard*

The right to a trial by jury has long been held to be a fundamental right guaranteed to all under the Constitution. "Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which-were they to be tried in a federal court-would come within the Sixth Amendment's guarantee." *Duncan v. State of La.*, 391 U.S. 145, 149 (1968).

"The right to a jury trial, conferred by the Constitution, is waivable, as long as the waiver includes the consent of the government counsel, the sanction of the court, and the express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930), (*overruled on other grounds by Williams v. Florida*, 399 U.S. 78, 92 (1970) (internal quotations omitted). "Since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). The Supreme Court has established that a guilty verdict after waiver of a jury trial can only be set aside upon a plain showing that "such waiver was not freely and intelligently made." *Filiaggi v. Bagley*, 445 F.3d 851, 855 (6th Cir. 2006). A defendant will be held to have made an intelligent decision in regards to jury waiver if "he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983).

13

2.    *Analysis*

Petitioner claims that his waiver of a jury trial was not knowing or voluntary. Specifically, he claims that his decision to waive a jury trial was based on erroneous advice from his trial attorney that evidence of his alleged gang involvement and prior bad acts would not be admissible at a bench trial, while it would be admissible at a jury trial. Even if counsel had erroneously told petitioner that evidence would not be admissible at a bench trial but would be at a jury trial, it still cannot be considered bad trial strategy. A judge presiding over a bench trial knows what evidence can be used substantively and what evidence cannot, while a jury, even a well instructed jury, may use the same as evidence of guilt.

There is nothing in the record that indicates petitioner was unaware of what it meant to waive a jury trial. At a motion hearing for the waiver of jury trial, the trial judge spoke with petitioner about his decision:

> THE COURT: OK, Mr. Hill, you have the absolute right to have a jury trial. If you want to do that nobody can stand in your way. Do you understand that?
>
> MR. HILL: Yes sir.
>
> THE COURT: Has Mr. Mirque explained to you the advantages and disadvantages of doing it each way?
>
> MR. HILL: Yes.
>
> THE COURT: It looks to me like he's been real thorough throughout. You understand that I will certainly confine my decision to the evidence presented in the trial, but that I stand in a different position than the jurors. For example, I've already tried Mr. Lott's case. You know that.
>
> MR. HILL: Right.
>
> THE COURT: And I know what the rules are. Like I said, I'll follow all the rules, but I have heard all that testimony. Also, if there are any - and I can't remember if there are, but if there are any previous convictions that you have, those

14

> generally don't come into the trial in front of a jury and I probably know about those because they're in the file, or I will be the time the trial happens. Do you understand that?
>
> MR. HILL:   Yes sir.
>
> THE COURT:   And the jurors don't hear anything about sentencing options, sentencing guidelines or all of that stuff and I know all those things. Do you understand that?
>
> MR. HILL:   Yes sir.
>
> THE COURT:   OK. Do you have any questions about this process that you want to ask me?
>
> MR. HILL:   No sir.

*See* Mot. Hr'g Tr., 5/8/2006 at 23-24.

The judge was thorough with his questions to petitioner. Petitioner made no indication that he did not understand what it meant to waive a jury trial or that he had been coerced into doing so. As the transcript clearly shows, petitioner knowingly and intelligently waived his right to a jury trial and therefore this claim does not merit habeas relief.

F.     *Evidence (Claim III)*

1.     *Legal Standard*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an

issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.    *Analysis*

The admission of expert testimony and the rules surrounding hearsay testimony are questions of state law non cognizable on habeas review.  In order to have a viable habeas claim, petitioner must show "that the admission of the expert testimony denied him a fair trial." *Wilson v. Parker*, 515

F.3d 682, 705 (6th Cir. 2008).

"Expert testimony, whether in the form of an opinion based on hypothetical questions or otherwise, is commonly admitted as evidence where it might help the factfinder do its assigned job." *Barefoot*, 463 U.S. at 903 (1983). "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is material in the sense of a crucial, critical, highly significant factor." *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (internal quotations omitted). The expert testimony provided by Detective Michael Mesman did not provide evidence of a "crucial, critical, highly significant factor". On the contrary, the testimony that petitioner argues as being inadmissible was nothing more than the detective speaking hypothetically about what "might" or "could" have happened. *See* Trial Tr. 8/25/2006 at 51-52. The state court, in an opinion denying petitioner relief, stated that the testimony petitioner claims to be inadmissable was actually proper under Michigan law, *People v. Hill,* No. 05-52634-FC, at 3 (Kent County, Mich., Cir. Ct. Apr. 20, 2009) [hereinafter "Trial Ct. op."], and even if it was incorrectly admitted, the admission raises a question of state law non cognizable on habeas review.

The defense attorney was given the opportunity to cross examine the witness and to make clear what he was testifying to as fact, and what he was testifying to as a mere hypothetical. Moreover, the judge acted as the trier of fact in petitioner's trial and was better suited than a lay jury to differentiate between hearsay and substantive testimony. Petitioner "has not shown that the admission of the expert testimony denied him a fair trial," *Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008), and therefore in not entitled to habeas relief on this claim.

G.     *Failure to Disclose Deal/Perjured Testimony (Claim V)*

1.     *Legal Standard*

17

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). In *Napue v. Illinois*, 360 U.S. 264, 268-69 (1959) and *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), the Supreme Court held that a defendant's right to a fair trial under the Fourteenth Amendment may be violated where the prosecution deliberately misleads a jury, or allows misleading testimony to go uncorrected, with respect to any promises offered a key prosecution witness in exchange for his testimony. A *Napue/Giglio* violation is a subset of a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Court held that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610

18

F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982)

("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

Because the purpose of *Brady* is to permit a defendant to put all exculpatory information

before the jury, "*Brady* generally does not apply to delayed disclosure of exculpatory information,

but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002)

(internal quotation omitted). Even where "previously undisclosed evidence is disclosed . . . during

trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure."

*Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*,

306 F.3d at 421 ("Delay violates *Brady* only where the delay causes prejudice."); *United States v.*

*Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).

2.    *Analysis*

Petitioner claims that the prosecutor elicited false and misleading testimony when law

enforcement personnel suggested that Howard Mayfield received no promises for testifying and had

never been untruthful.

Petitioner relies on an opinion by a federal judge handling Mayfield's postconviction effort

to have his conviction overturned where the judge questioned Mayfield's credibility in averring that

he requested that counsel file an appeal. *Mayfield v. United States*, No. 1:05-CV-305, 2005 WL

3447669, at *7 (W.D. Mich. Dec. 15, 2005). Petitioner claims that the prosecutor elicited false

testimony from Agents Glynn and Mesman, relying solely on the federal judge's opinion regarding

Mayfield's honesty. The prosecutor asked questions specifically about information provided to them

from Mayfield in regards to his role as a confidential informant. Both agents testified that no

information given to them by Mayfield had turned out to be false, and petitioner does not point to

19

any evidence that the agents were lying when they said that Mayfield's information was reliable. Moreover, petitioner cannot establish a *Brady* claim because he cannot show that the information was suppressed by the prosecutor and not available from another source. The federal judge's opinion that petitioner relies on as evidence of Mayfield not being a credible witness was published before petitioner's trial making it available from another source and is therefore not a cognizable *Brady* claim.

Furthermore, the record clearly indicates that Mayfield was not given a deal in exchange for testimony against petitioner. Testimony from Agents Glynn and Mesman indicate that Mayfield was never offered any deal in exchange for his testimony. Mayfield was told that he would be able to solicit a reduced sentence if he cooperated, but was never given any guarantees to the likelihood of receiving a reduced sentence. Because there is no evidence that Mayfield was given a deal in exchange for his testimony, petitioner cannot establish a *Giglio* violation.  See *Abdur-Rasheed v. Jones*, 100 Fed. Appx. 357, 359 (6th Cir. 2004); *United States v. Elkins*, 885 F.2d 775, 788 (11th Cir. 1989); *Leonard v. Warren*, No. 03-CV-71430, 2005 WL 1349115, at *4 (E.D. Mich. Jan. 31, 2005) (Komives, M.J.), report adopted, 2005 WL 2072108 (E.D. Mich. Aug. 25, 2005) (Roberts, J.). Further, the trial judge acted as the trier of fact at trial and was made aware that Mayfield was hoping that his cooperation would lead to a reduced sentence and therefore was aware of the potential influence on Mayfield's credibility as a witness. Because the judge was aware of the circumstances surrounding Mayfield's testimony, it did not effect the fairness of petitioner's trial. Therefore, "the prosecution's failure to disclose the alleged agreement would not, with reasonable probability, have changed the result of the underlying proceeding."  *Williams v. Calderon*, 48 F. Supp. 2d 979, 1003 (C.D. Cal. 1998).  Accordingly, the Court should conclude that petitioner is not

entitled to habeas relief on this ground.

H.  *Denial of Confrontation (Claim VI)*

1.  *Legal Standard*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). Prior to petitioner's trial, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980). In *Roberts*, the Court explained that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings. Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66. As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

21

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. In *Crawford*, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Crawford*, 541 U.S. at 68. The Court did, however, provide some guidance. Specifically, the Court provided three possible "formulations of th[e] core class of 'testimonial' statements":

> [1] *ex parte* in-court testimony or its functional equivalent–that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotations and citations omitted). While the Court declined to adopt any of these three formulations, the Court noted that the term "testimonial," whatever else it may cover, "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former

trial; and to police interrogations." *Crawford*, 541 U.S. at 68.

*Crawford* establishes a confrontation rule with respect to "testimonial" statements; it has no application to non-testimonial hearsay. The question therefore remains whether *Roberts* has any applicability to this case to the extent that the statements admitted at petitioner's trial were not testimonial hearsay under *Crawford*. Because it is now clear that the Confrontation Clause is not at all concerned with non-testimonial hearsay, the Court should conclude that *Roberts* has no application here.

In *Crawford*, the Court suggested, but did not definitively rule, that the Confrontation Clause is limited to regulating the introduction of testimonial hearsay, and has no application at all to the admission at trial of non-testimonial hearsay. The Court explained that "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68. Immediately following *Crawford*, the Courts concluded that *Roberts* remained applicable to non-testimonial hearsay, observing:

> [t]he lynchpin of the *Crawford* decision thus is its distinction between testimonial and nontestimonial hearsay; simply put, the rule announced in *Crawford* applies only to the former category of statements. . . . [U]nless a particular hearsay statement qualifies as "testimonial," *Crawford* is inapplicable and *Roberts* still controls.

*United States v. Hendricks*, 395 F.3d 173, 179 (3d Cir. 2005); *see also*, *Horton v. Allen*, 370 F.3d 75, 83-84 (1st Cir. 2004); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *United States v. Savoca*, 335 F. Supp. 2d 385, 391-92 (S.D.N.Y. 2004). Regardless of whether this reading of the *Crawford* dictum was correct, the Supreme Court has since clarified that the Confrontation Clause is simply not implicated by the introduction of non-testimonial hearsay. In

23

*Davis v. Washington*, 547 U.S. 813 (2006), the Court explicitly addressed this question of "whether the Confrontation Clause applies only to testimonial hearsay," *id.* at 823, and in doing so abrogated *Roberts* in whole.  The Court noted that the answer to this question was suggested in *Crawford*, when the *Crawford* decision explained that the Confrontation Clause focuses on "witnesses" who give "testimony." *Id.* at 823-24 (discussing *Crawford*, 541 U.S. at 51).  The *Davis* Court explained that "[a] limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter." *Id.* at 824  Thus, where nontestimonial hearsay is at issue, the Confrontation Clause is not implicated at all, and need not be considered.  *See Whorton v. Bockting*, 549 U.S. 406, 420 (2007) ("Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability.  Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability."); *United States v. Pugh*, 273 Fed. Appx. 449, 454 (6th Cir. 2008); *United States v. Feliz*, 467 F.3d 227, 231 (2d Cir. 2006).

2.    *Analysis*

Petitioner claims that the trial court erroneously admitted hearsay statements made by a witness for the prosecution denying him the right to confrontation guaranteed under the Sixth Amendment of the Constitution. Specifically, petitioner claims that statements made during the testimony of Howard Mayfield should not have been admitted at trial. Mayfield testified to a conversation that he had with Jason Lotts which implicated petitioner as being involved in gang activity:

Q.    How did you react to Jason asking you for money?
A.    My first reaction was - I asked D'Mitch and Weewee why they won't send

24

> this guy money.
> Q.     Were D'Mitch and Weewee standing right there?
> A.     Yes.
> Q.     And you asked them why they're not sending Jason any money?
> A.     Yes.
> Q.     How did they react?
> A.     D'Mitch say he pay Weewee to take care of it.

(Trial Tr. 8/29/06 at 217).

Petitioner erroneously claims that *Ohio v. Roberts*, 448 U.S. 54 (1980), continues to govern cases involving non-testimonial hearsay. The *Roberts* court held that hearsay evidence must be excluded absent a showing of particularized guarantees of trustworthiness. *Id.* at 66. As discussed above, the decision in *Crawford v. Washington,* 541 U.S. 36 (2004)*,* abrogated the decision in *Roberts* in regards to "testimonial" hearsay by concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  *Id.* at 68-69. Two years later, the *Davis* court abrogated *Roberts* in whole by concluded that non-testimonial hearsay does not implicate the Confrontation Clause and need not be considered. *Davis v. Washington*, 547 U.S. 813 (2006).

The testimony given by Mayfield did not relate hearsay; it related a conversation that he had with both D'Mitch and petitioner and set forth the  response to a question that Mayfield himself had posed to both D'Mitch and petitioner during this three-way conversation.  His testimony cannot be considered  hearsay.

I.     *Ineffective Assistance of Counsel*

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To

establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

With respect to appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.* As a general rule, it is "'only when ignored issues are clearly stronger than those

27

presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

2.   *Analysis*

Petitioner claims that trial counsel was ineffective for not objecting to hearsay statements made about his alleged gang activity. The state court addressed, and reasonably rejected this claim:

> Defendant also objects that the testimony connecting him to gang activity was all hearsay. Defendant hasn't identified any hearsay, though. That is, defendant hasn't cited any out-of-court statements that were admitted at trial. What defendant is really challenging is the foundation of the witnesses' personal knowledge, but he has not established any reason for excluding the testimony on that basis.
> Connected to the previous argument, defendant argues that trial counsel elicited testimony that the gang was involved in 25 shootings and 3 murders. Counsel was not the first to elicit this testimony, though; it had already been brought out on direct examination, and counsel was merely reviewing it.

Trial Ct. op. at 3-4. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Likewise, counsel cannot be considered inadequate for not objecting to clearly admissible testimony or evidence.

"The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694. Even assuming that counsel should have objected to the witnesses's statements about petitioner's alleged gang activity, petitioner has still failed to show that but for

28

counsel's errors the result of the trial would have turned out differently. The undisputed facts of the case are enough to implicate petitioner as an accomplice; the car that was driven the night of the murder was registered to petitioner's grandmother, the eye witness accounts of petitioner being at the club with Jason Lotts, and the security tapes from the night club that show petitioner leaving with Jason Lotts immediately after the victim left constitutes strong evidence showing petitioner's participation in the crime. Therefore, even assuming that the testimony petitioner challenges as inadmissable was objected to and that the judge would have sustained the objections, there was still strong evidence implicating petitioner in the crime and supporting the trial judge's finding that his guilt had been established beyond a reasonable doubt.

In regards to petitioner's claim of ineffective assistance of appellate counsel, this claim also falls well short of viability. Petitioner argues that appellate counsel's decision to only appeal the allegedly hearsay statement of "there go Weewee and them" was a poor decision because there were stronger arguments that could have been raised, namely issues I through VI raised in his habeas petition. The state court also rejected this clam:

> "This court concludes that every issue that defendant seeks to raise presents a significant obstacle that would have made it a poor argument to raise on appeal. In short, none of these arguments was so salient and compelling that it was ineffective for appellate counsel not to raise them. For the same reasons, defendant has not established actual prejudice..."

Trial Ct. op. at 5.

Appellate counsel is not ineffective for not raising every meritless issue on appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Petitioner has failed to show a reasonable probability that the claims not raised by appellate counsel would have actually succeeded on appeal. Moreover, none of the issues that petitioner claims should have been

raised were clearly stronger than the issue raised by appellate counsel.

For the reasons discussed above, petitioner's claims of ineffective assistance of counsel and ineffective assistance of appellate counsel are without merit and habeas relief should be denied for these claims.

J.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.     *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Petitioner has not brought forth the evidence needed to prove his claims. Petitioner has failed to support his claim of a biased trier of fact with any evidence that the judge who presided over the bench trial had actually shown bias. A review of the  transcripts also show that petitioner's claim of involuntary waiver of jury trial are without merit. Petitioner's claims of improper admission of hearsay evidence

and expert testimony raise issues of state law not cognizable on habeas review. And finally, petitioner's ineffective assistance claims fail to show that counsel had preformed inadequately and that petitioner suffered actual prejudice because of counsels mistakes.

The resolution of petitioner's claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

K.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 S/Paul J. Komives_____
                                                 PAUL J. KOMIVES
                                                 UNITED STATES MAGISTRATE JUDGE

Dated: July 25, 2013___

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 25, 2013.

                                                s/Felicia M. Moses_____
                                                FELICIA M. MOSES
                                                *Acting Rotating Case Manager*