UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VAUGHN HILL,

        Petitioner,

                                        Civil Case No. 10-14674

v.

                                        HON. MARK A. GOLDSMITH

PAUL KLEE,

        Respondent.

_____/

**OPINION AND ORDER**
**OVERRULING PETITIONER'S OBJECTIONS (Dkt. 19), ACCEPTING AND**
**ADOPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE'S**
**REPORT AND RECOMMENDATION DATED JULY 25, 2013 (Dkt. 16), DENYING**
**PETITIONER'S HABEAS PETITION (Dkt. 8-1), and DECLINING TO ISSUE A**
**CERTIFICATE OF APPEALABILITY**

**I. INTRODUCTION**

Petitioner Vaughn Hill, a state prisoner currently confined at the St. Louis Correctional Facility in St. Louis, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his Muskegon County Circuit Court conviction and sentence for first degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.[1] See Am. Pet. (Dkt. 8-1). Specifically, Petitioner was found to have been an accomplice to Jason Lotts, who murdered Jabar Dean on December 15, 2002 in Grand Rapids, Michigan. Petitioner and Lotts were separately tried in bench trials before Judge Timothy G. Hicks.

---

[1] In his amended habeas petition, Petitioner alleges several grounds for relief: (i) the state-court judge was biased due to the evidence introduced during another trial over which the state-court judge presided; (ii) Petitioner's waiver of a jury trial was not knowing and voluntary; (iii) Petitioner was deprived of a fair trial by the admission of "purported expert testimony" that Petitioner participated in gang-related activities; (iv) trial counsel failed to object to hearsay and other evidentiary rulings; (v) the prosecution failed to disclose the extent of its deal with a key prosecution witness; (vi) Petitioner was convicted based on inadmissible hearsay; and (vii) appellate counsel was ineffective for failing to raise meritorious claims during Petitioner's direct appeal. Pet'r Br. at 14-82 (Dkt. 8-1).

Respondent filed a response to the petition (Dkt. 12), and Magistrate Judge Paul J. Komives issued a Report and Recommendation (R&R) on July 25, 2013.  R&R (Dkt. 16). The factual and procedural background of this case, along with the standard of review and legal principles governing writs of habeas corpus made under 28 U.S.C. § 2254, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here.  The R&R recommends denying Petitioner's habeas petition and denying the issuance of a certificate of appealability.   Petitioner filed objections to the Magistrate Judge's recommendations.  Pet'r's Objs. (Dkt. 19).  Respondent did not file a response to Petitioner's objections.   The Court reviews de novo those portions of the R&R to which a specific objection has been made.  Fed. R. Civ. P. 72(b)(3).  For the reasons that follow, the Court will accept and adopt the recommendations in the R&R, overrule Petitioner's objections, deny Petitioner's habeas petition, and decline to issue a certificate of appealability.

## II. ANALYSIS

Petitioner advances six objections to the R&R.   The Court addresses each of Petitioner's objections, in turn.

### A.  First Objection

In Petitioner's first objection, Petitioner claims that the R&R made erroneous factual findings by referencing "fingerprint evidence" and finding that "Petitioner and two companions" got into a black SUV and that "Jason Lotts jogged away" from the scene of the murder of Jabar Dean "until he was picked up by a black Yukon."  Pet'r's Objs. at 1-2.

Upon de novo review of the R&R concerning Petitioner's factual challenges, the Court applies the statutory standard for habeas claims under 28 U.S.C. § 2254(d), which requires a federal habeas court to determine whether the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also Lovins v. Parker, 712 F.3d 283, 293 (6th Cir.

2

2013) (citing 28 U.S.C. § 2254(d)). Here, Petitioner fails to identify the significance of the supposedly unreasonable determination of the facts and how they affect the merits of his habeas claim. The objection is vague and the Court is left to guess at the significance, if any, of these statements. Consequently, the objection fails on its face. Drew v. Tessmer, 36 F. App'x 561 (6th Cir. 2002) ("The filing of vague, general, or conclusory objections does not meet the requirements of specific objections and is tantamount to a complete failure to object."). "[O]bjections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). Tellingly, Petitioner does not reference these findings again in his objections. The Court has no basis to discern Petitioner's contentions and, therefore, Petitioner has failed to carry his burden in objecting.[2]

Accordingly, the Court overrules Petitioner's first objection.

**B.  Second Objection**

In his second objection, Petitioner argues that the R&R used "an incorrect standard of law" to analyze his claim that the state-court judge was biased against him. Pet'r's Objs. at 2-4. In support of this objection, Petitioner argues that Ungar v. Sarafite, 376 U.S. 575 (1964), In re Murchison, 349 U.S. 133 (1955), and Withrow v. Larkin, 421 U.S. 35 (1975), control the issue of whether Petitioner suffered bias at the hands of the state-court judge and

---

[2]  Furthermore, a review of the record demonstrates that evidence was submitted at trial to support the statements that Petitioner takes issue with in the R&R. With regard to fingerprint evidence, the R&R stated that evidence at trial included fingerprint evidence; the R&R did not state such evidence was Petitioner's. R&R at 7. And the trial transcript explicitly references fingerprint evidence. See, e.g., 8/30/06 Tr. at 52-69 (Dkt. 11-10). The R&R's statements that Petitioner got into a black SUV with two companions and that Lotts was picked up by a black Yukon after the shooting are not unreasonable determinations. The R&R made such findings on witness testimony that these events occurred, albeit on circumstantial evidence. For example, testimony established that, on the night of the murder, Petitioner left a bar prior to the murder with two companions, 8/30/06 Tr. at 118 (Dkt. 11-10), and, shortly thereafter, another witness stated that Petitioner drove past him with the companions. 8/24/06 Tr. at 107 (Dkt. 11-7). Testimony also established that after Lotts shot Dean, Lotts jogged and got into the Yukon. 8/29/06 Tr. at 116-118 (Dkt. 11-9).

not the authority cited in the R&R.  Petitioner submits that he has demonstrated that he
suffered from bias because the state-court judge stated that he found the evidence from
Petitioner's trial and Lotts' trial to be "haunting."[3]  9/1/06 Tr. at 3-4 (Dkt. 11-12).  Petitioner
also states that the state-court judge (i) was exposed to information of the case in a way that a
jury would not have been and (ii) did not acknowledge the "[c]onstitutional requirements of a
neutral fact finder."  Pet.'r's Objs. at 4.  These arguments lack merit.

Many of the cases cited by Petitioner discuss judicial bias in contexts not at all similar
to Petitioner's case.[4]  Furthermore, Petitioner fails to show how the cases used by the
Magistrate Judge were incorrect or inapposite.[5]  In fact, a case cited by Petitioner fully

---

[3] At the hearing on the verdict in Petitioner's case, Judge Hicks stated the following:

> I do want to share with you one other personal note before we get into this.  This
> is, I think we all know, the second time I've been down this road.  The first one
> was with Mr. Lotts and I continue to be troubled by some of the haunting images
> here.  The one picture of Johnny Greer, who is now dead, continues – one of the
> pictures to be stuck in my mind.  The picture admitted in this case and the other
> case of Mr. Dean at Rush Street with his friends, you know, maybe 15, 20
> minutes before he is killed, is one that continues to haunt me.  The video of Mr.
> Hill and Mr. Lotts at Rush Street only a few minutes, and so [sic] some extent Mr.
> Black, before these events all – all occurred is one that continues to haunt me.

9/1/06 Tr. at 3-4.

[4] In Ungar v. Sarafite, the Supreme Court found no bias where the trial judge used stern
language to rein in a party's disruptive conduct in open court.  The Court held that the lack of
evidence showing "a direct personal interest in the outcome of the hearing" prevented it from
finding bias.  Ungar, 376 U.S. at 586.  With regard to In re Murchison, the Court held that a
judge cannot act as one-man grand jury, indict a defendant, and then preside over the
defendant's trial.  Murchison, 349 U.S. at 137 ("Fair trials are too important a part of our free
society to let prosecuting judges be trial judges of the charges they prefer.").  Lastly, Withrow
recognized that bias could arise in cases where "the adjudicator has a pecuniary interest in the
outcome and in which he has been the target of personal abuse or criticism from the party
before him."  Withrow, 421 U.S. at 47.  By contrast, Petitioner makes no claim here that the
state-trial judge had a direct personal or financial interest in his case, or that the judge acted
in both an investigatory and judicial role.

[5] The cases Petitioner takes issue with remain good law.  For example, one of the cases,
Duckett v. Godinez, 67 F.3d 734 (9th Cir. 1995), has been cited approvingly by the Sixth
Circuit for the test of judicial bias.  See, e.g., Todd v. Stegal, 40 F. App'x 25, 27 (6th Cir.
2002) ("To violate a defendant's right to a fair trial, a trial judge's comments and conduct

4

supports the reasoning and result of the R&R.  In Liteky v. United States, 510 U.S. 540, 555 (1994), the Supreme Court stated that, to demonstrate bias through judicial statements, a party must show that the remarks reflect "a deep-seated favoritism or antagonism that would make fair judgment impossible."  Hostile remarks made by a judge during the course of a trial "ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. (emphasis in original).  Under this standard, the state-court judge's comments that the evidence admitted in Lotts' and Petitioner's trials was "haunting" do not show deep-seated favoritism or antagonism.   The judge's comments related the judge's own impressions of evidence admitted at the trials and were made at the hearing on the verdict for Petitioner's trial.

Petitioner's other arguments in support of this objection similarly lack merit because Petitioner has not shown that the state-court judge was not neutral, and does not direct the Court to any other evidence regarding the state-court judge's alleged lack of neutrality, other than the state-court judge's characterization of the evidence.  Petitioner objects that the state-court judge was exposed to information of the case in a way that a jury would not have been, but Petitioner was tried at a bench trial at his election, where the judge was the fact-finder. Petitioner also complains that the state-court judge did not recognize the "[c]onstitutional requirements of a neutral fact finder" as required under Ungar.  Pet'r's Objs. at 4.  But the state-court judge addressed the concerns of having a neutral fact finder on the record when the judge discussed Petitioner's right to a jury trial, the differences between a bench and jury trial, and Petitioner's knowing waiver of his right to a jury trial.  5/8/06 Tr. at 23-26 (Dkt. 11-4) (agreeing to a bench trial, and acknowledging that the judge "stand[s] in a different position than the jurors," because, in part, he had "already tried Mr. Lott's [sic] case," he

_____

would have to reach a significant extent and be adverse to the defendant to a substantial degree." (citing Duckett, 67 F.3d at 740)).

would know petitioner's sentencing history, and he was familiar with the sentencing guidelines).

Accordingly, the Court overrules Petitioner's second objection.

## C.  Third Objection

In Petitioner's third objection, Petitioner argues that the R&R applied an "overly restrictive construction" of the rule that habeas relief is not available to remedy a state court's error in the application of state law, such as an evidentiary rule, unless the error results in a denial of fundamental fairness.  Pet'r's Objs. at 4.  See, e.g., Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001) ("A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights.").  In support of this objection, Petitioner makes two unrelated arguments, which the Court addresses and rejects below.

### 1.  Standard of Review Regarding Application of Evidentiary Rule

In his first argument, Petitioner argues that the standard for a habeas court in reviewing a state-court's evidentiary ruling is that "highly flawed evidence, even if allowable under state law, cannot be allowed to defeat the ends of justice and deny the accused to a fundamentally fair trial."  Pet'r's Objs. at 4 (citing Ege v. Yukins, 485 F.3d 364 (6th Cir. 2007) and Chambers v. Mississippi, 410 U.S. 284 (1973)).  Petitioner contends that the R&R used the incorrect standard by citing to Pemberton v. Collins, 991 F.2d 1218 (5th Cir. 1993). The Court disagrees.

In Ege, the Sixth Circuit stated the following:

> Any review of habeas due process claims based on improper admission of evidence must be cognizant of the Supreme Court's mandate that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Under this very deferential standard, due process is violated, and thus habeas relief warranted, only if an evidentiary ruling is so egregious that it results in a denial of fundamental fairness. Whether the admission of prejudicial evidence constitutes a denial

6

> of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor.

Ege, 485 F.3d at 375 (quotation marks and citations omitted).  The Ege court also cited Chambers, stating that "trial errors cannot 'defeat the ends of justice' or otherwise deprive a defendant of her right to a fair trial."  Id. (quoting Chambers, 410 U.S. at 302-303).

The statements in Ege and Chambers are similar to the rule announced in Pemberton, where a habeas petitioner claimed the state court erred by admitting his inadmissible, but voluntary, confession.  In rejecting the petitioner's claim, the Pemberton court stated that "[a]n error in the application of state law by the trial court does not provide grounds for habeas relief."  Pemberton, 991 F.2d at 1223.  The court further explained that a "federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  Id.

In reviewing Pemberton, the Court concludes that it contains the same standard for a federal habeas court concerning the alleged improper admission of evidence during state-court proceedings.  By citing Pemberton, the R&R did not apply an overly restrictive interpretation of the case law, and the Court rejects Petitioner's argument concerning the R&R's recitation of the applicable standard regarding state-court evidentiary rulings.[6]

---

[6] Petitioner overlooks that the R&R contains controlling Sixth Circuit law to which Petitioner makes no objection.  See, e.g., R&R at 16 ("As the Sixth Circuit has noted, '[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" (quoting Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994))).  With the R&R containing an accurate statement of Sixth Circuit law, the Court has another basis to overrule the objection to the extent it argues that the R&R used an incorrect or "restrictive" standard.

### 2. Detective Mesman's Testimony

In Petitioner's second argument, Petitioner claims that the R&R erred by characterizing Detective Michael Mesman's expert testimony as not a "'crucial, critical, highly significant factor.'"  Pet'r's Objs. at 5 (quoting R&R at 17).  Petitioner contends that the state court erred by admitting Mesman's "highly speculative testimony" that Petitioner was affiliated with a gang, and that this testimony was an important aspect of the prosecution's case and the state-court's verdict.  Id. at 6.

With regard to testimony, a habeas court must be cognizant that it "cannot issue a writ of habeas corpus 'on the basis of a perceived error of state law.'"  Wilson v. Parker, 515 F.3d 682, 705 (6th Cir. 2008) (quoting Pulley v. Harris, 465 U.S. 37, 41 (1984)).  A state-court "judge's decision concerning the admission of evidence is a state law matter generally not subject to habeas review."  Id.  In challenging expert testimony, a petitioner must show that "the admission of the expert testimony denied him a fair trial."  Id.

Here, Detective Mesman testified that Petitioner had a relationship with an individual named Darryl Mitchell, who was known to law enforcement agents to be involved in drug trafficking.  8/25/06 Tr. at 45, 51-52 (Dkt. 11-8).  However, the transcript clearly shows that the trial judge did not consider the relationship between Petitioner and Mitchell to be highly important.  9/1/06 Tr. at 10 ("Now, if that's all we had, the stuff up here, the relationship evidence before, it wouldn't be enough to convict beyond a reasonable doubt.").  The state court, instead, relied upon other evidence that centered on the night of Dean's murder.  Id. ("But what happens then is the evidence about what happens at Rush Street that night and this evidence is very, very strong and it really helps push the evidence over the bar that the prosecutor has to surmount here to prove a conviction.").  Such evidence included a video of Petitioner at a bar and statements from witnesses.  Id. at 10-14.  Furthermore, the R&R noted that expert testimony in the form of opinions based on hypothetical questions is permissible,

and the defense attorney had the opportunity to cross-examine the detective, R&R at 17, points to which Petitioner did not object. The Court concludes that Petitioner has not shown "that the admission of the expert testimony denied him a fair trial." Wilson, 515 F.3d at 705.

Accordingly, the Court overrules Petitioner's third objection.

### D. Fourth Objection

In Petitioner's fourth objection, Petitioner makes the following terse argument:

> Petitioner objects to two findings of the Magistrate: (1) the finding that Agents Glynn and Mesmann were not lying when they testified that Howard Mayfield had never been unreliable and (2) the finding that Mayfield was not given "a deal" in exchange for his testimony against Petitioner. Report, pp 19-20. Petitioner submits that each of these findings is factually unreasonable in light of the evidence cited in the Petition and Brief, and is accordingly clearly erroneous. U.S. v Evans, 581 F3d 333, n. 4 (6th Cir 2009). A de novo standard of review of the Magistrate's legal conclusions is required. Fluornoy v Marshall, 842 F2d 875 (6th Cir 1988).

Pet'r's Objs. at 7.

Although it is not quite clear, Petitioner's objection appears to take issue with the R&R's factual findings as they relate to the R&R's conclusion that Petitioner's due process rights to a fair trial were not violated, as alleged in his fifth claim for habeas relief. See Pet. at 64-72. In his petition, Petitioner alleges that the prosecution had failed to disclose evidence that would have impeached the testimony of Howard Mayfield, a witness for the prosecution. Id. at 65. At Petitioner's trial, Mayfield testified that Dean had threatened a group of people, including Petitioner, at a night club on the night of Dean's murder. 8/29/06 Tr. at 210, 231 (Dkt. 11-9). Mayfield also testified that he spoke with Lotts on Petitioner's phone when Lotts called seeking money from Petitioner, Mayfield, and other associates of Petitioner. Id. at 231. Petitioner further alleges that Glynn, a DEA agent, and Mesman committed perjury when they testified that "Mayfield received no promises for testifying and has never been wrong, unreliable, or inaccurate." Pet. at 67. In support of this claim, Petitioner observes that District Judge Gordon J. Quist of the Western District of Michigan

stated in a 2005 opinion that Mayfield had "engaged in a pattern of lies." Id. at 70. Petitioner contends that this failure to disclose this evidence by the prosecution amounted to a violation under Brady v. Maryland, 373 U.S. 83 (1963). Pet. at 66. As explained below, the objection lacks merit.

In order to establish a Brady claim, a petitioner must demonstrate that (i) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (ii) the evidence was favorable or exculpatory; and (iii) the evidence was material to the question of the petitioner's guilt. Carter v. Bell, 218 F.3d 581, 601 (6th Cir. 2000). A prosecutor must "disclose evidence that may impeach the credibility of a witness." Wilson v. Parker, 515 F.3d 682, 701 (6th Cir. 2008) (citing Giglio v. United States, 405 U.S. 150, 153-154 (1972)). A habeas petitioner bears the burden of establishing the elements of a Brady claim. Carter, 281 F.3d at 601.

Here, as with Petitioner's first objection, the Court applies the statutory standard for habeas claims set forth in 28 U.S.C. § 2254(d). The Court must determine whether the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Lovins, 712 F.3d at 293.

As the R&R noted, the only evidence Petitioner cites is Judge Quist's opinion, denying Mayfield's "motion to vacate, set aside, or correct sentence" made pursuant to 28 U.S.C. § 2255. See Pet. at 66 (quoting Mayfield v. United States, No. 1:05-CV-305, 2005 WL 3447669, at *7 (W.D. Mich. Dec. 15, 2005)). According to Judge Quist's opinion, Mayfield pled guilty to two drug charges and was sentenced to 194 months in prison in 2004. Mayfield, 2005 WL 3447669, at *1. In 2005, Mayfield filed a timely § 2255 motion attacking his sentence. In denying the motion, Judge Quist rejected Mayfield's argument that he had received ineffective assistance of counsel. Id. at *4-7. In doing so, Judge Quist

10

questioned Mayfield's credibility in averring in an affidavit that he requested that his trial counsel file an appeal.   Judge Quist compared Mayfield's affidavit to the sentencing transcript and to the affidavit of Mayfield's trial counsel and firmly rejected Mayfield's allegation that he wanted his trial counsel to file an appeal, but his trial counsel did not do so:

> As shown by the record quoted on page 6 of this Opinion, [Mayfield], himself, said that he had no objection to anything in the PSR. This was not just his lawyer's decision. A sentencing court should be able to rely upon a defendant's statements at the time of plea and sentence. Any other rule would permit a person such as [Mayfield] to continue his pattern of lies and misleading statements so that he could never be pinned down as to the truth, i.e., "If this doesn't work, I'll try another lie."

Id. at *7.

On these facts, the Court upholds the R&R's conclusion that Petitioner cannot establish a Brady claim because there is no indication that evidence was suppressed by the prosecution.   Although Judge Quist's opinion may cast some doubt on Mayfield's truthfulness with respect to his § 2255 motion, it was issued in December 2005, several months before Petitioner's trial in August 2006.   As the R&R stated, the opinion was available from another source and there is no evidence that the prosecutor suppressed it, Carter, 218 F.3d at 601, two points overlooked by Petitioner in his objection.

Furthermore, although Petitioner claims that the prosecutor elicited false testimony from Glynn and Mesman, a review of the transcript shows that both agents testified that Mayfield had never given them false information and that Mayfield was never offered any deal in exchange for his testimony.   See, e.g., 8/25/06 Tr. at 10-11; 8/29/06 Tr. at 20-22, 204 (Dkt. 11-9) (reflecting agents' interaction with Mayfield and Mayfield's own statement that he was not promised anything).   Simply put, there is no evidence that the agents committed perjury and the record lacks evidence that Mayfield was given a deal in exchange for his testimony.

Accordingly, Petitioner's fourth objection is overruled.

**E.  Fifth Objection**

In Petitioner's fifth objection, Petitioner objects to the R&R's recommendation that trial and appellate counsel for Petitioner did not render ineffective assistance.  Pet'r's Objs. at 7-8.   Petitioner claims that the R&R incorrectly characterized Petitioner's claim of ineffectiveness as relating only to his trial counsel's failure to object to hearsay.  Id. at 7.  Instead, Petitioner claims that his trial counsel's ineffectiveness extended to failing "to object to a wide scope of inadmissible, unfairly prejudicial, and unreliable testimony," that was not "clearly admissible."  Id. at 7-8.  Petitioner also claims that he suffered prejudice because the non-objectionable evidence was tainted by the objectionable evidence, allowing the trial judge to find that Petitioner was an aider and abettor in the murder of Dean.  Id. at 8.  Lastly, Petitioner claims that the R&R erred in its analysis of his appellate counsel's ineffectiveness in light of "the substantial body of case law."  Id.  Upon de novo review, the Court rejects these arguments.

In making this objection, Petitioner attempts to expand his habeas claim wherein Petitioner only referenced hearsay evidence.  Indeed, the caption of the relevant claim for habeas relief was captioned as follows: "Petitioner was denied due process of law and his right to confrontation by the erroneous admission of hearsay testimony (whether as a statement by a co-conspirator or as a statement against penal interest), resulting in defendant's [sic] having been convicted on the basis of inadmissible hearsay."  Pet'r's Br. at 73.  Likewise, in the body of the brief, Petitioner references only hearsay.  Id. at 73-76.  On objections to an R&R, a party cannot raise new arguments or expand previously made arguments.[7]  Murr v. United States, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (explaining that

---

[7] Additionally, Petitioner argues that People v. Fenner, 356 N.W.2d 1 (Mich. Ct. App. 1984), established that "there is no conceivable trial strategy to allow a parade of witnesses to inform the trier of fact of inadmissible evidence."  Pet'r's Objs. at 8.  However, Fenner does not establish the proposition that Petitioner says it does.  In Fenner, the Michigan Court of Appeals simply held that admission of two hearsay statements "was not harmless beyond a

"while the Magistrate Judge Act permits de novo review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." (internal citation omitted)). Petitioner has offered no explanation for his attempt to now expand his ineffective assistance of counsel claim and the Court concludes that Petitioner has waived any new arguments concerning ineffective assistance of his trial counsel.

As for the alleged hearsay statements originally identified in the petition, Petitioner did not object to the R&R's conclusion that the state court addressed and reasonably rejected the claim because the state court ruled that the statements were not hearsay. R&R at 28 (citing 4/20/09 Op. granting motion for reconsideration and denying motion for relief from judgment (Dkt. 2-3) (cm/ecf Pg ID 178-182)). Thus, counsel cannot be faulted for failing to object, when counsel did object and was overruled.

With regard to Petitioner's objection that the R&R erred by finding that Petitioner was not prejudiced by admission of hearsay, Petitioner's objection implicates the test for ineffective assistance under Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, a petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. Id. at 687. "[T]here is no reason" for the Court to "address both components of the inquiry if the defendant makes an insufficient showing on one. Id. at 697.

Here, even if the Court were to find that trial counsel's performance was deficient, the Court agrees with the R&R that there was substantial evidence in the record for the trial court to find Petitioner guilty beyond a reasonable doubt, preventing Petitioner from establishing

---

reasonable doubt," and reversed the trial court's denial of a motion for a new trial. Fenner, 356 N.W.2d at 3. Fenner did not address trial strategy and was directed toward the trial court's rulings on hearsay statements.

prejudice. Jackson v. Metrish, 485 F. App'x 781, 783 (6th Cir. 2012) (explaining prejudice could not be established where, after discounting the evidence challenged by the petitioner, "the remaining evidence introduced against him at trial was overwhelming and sufficient to establish guilt beyond a reasonable doubt"). The undisputed evidence – that Petitioner did not object to – shows that (i) the car involved in the murder was registered to Petitioner's grandmother; and (ii) eye witness accounts and videotapes placed Petitioner at a night club and show Petitioner leaving the club with Lotts immediately after Dean left. Because there was sufficient evidence to convict Petitioner as an accomplice to Lotts in Dean's murder, Petitioner was not prejudiced by any deficient performance by trial counsel. Id.

Petitioner's last argument concerning the ineffectiveness of his appellate counsel is unsupported. Petitioner makes the bald assertion that the R&R failed to take into account the "substantial body of case law" concerning deficient appellate counsel, but does not cite a single case and does not support his argument by explaining how his appellate counsel was ineffective. See Pet'r's Objs. at 8. Not only is it Petitioner's burden to establish the elements of his ineffective assistance of counsel claim, United States v. Pierce, 62 F.3d 818, 833 (6th Cir. 1995), in the appellate context, Petitioner must demonstrate a reasonable probability that his claims would have succeeded on appeal. Smith v. Robbins, 528 U.S. 259, 285-286 (2000). Petitioner's seven-line argument is wholly conclusory, without support, and fails to analyze how or why his appellate counsel was deficient.

Accordingly, Petitioner's fifth objection is overruled.

**F.  Sixth Objection**

In Petitioner's sixth objection, Petitioner argues that the R&R erred by finding that the resolution of Petitioner's claim is not reasonably debatable warranting the denial of a certificate of appealability. Petitioner claims that the R&R used a higher standard that Petitioner would need to show that he would be "likely to win an appeal." Pet'r's Objs. at 9.

14

In support of this argument, Petitioner focuses on the R&R's language stating "'Petitioner has not brought forth the evidence needed to prove his claims,'" and reasons that the R&R applied a more stringent standard than set forth under Slack v. McDaniel, 529 U.S. 473 (2000). Id. (quoting R&R at 31). Upon de novo review, the Court rejects Petitioner's argument.

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." If a district court rejects constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

Here, Petitioner's objection does not state which evidence has made a substantial showing. Like the first objection, Petitioner's vague and general objection fails to meet the specificity required in objecting to an R&R.. Drew, 36 F. App'x at 561; Miller, 50 F.3d at 380.

Furthermore, the Court rejects Petitioner's argument that the R&R applied a higher standard to his petition. Instead, the R&R reasoned that the lack of evidence made the resolution of Petitioner's claims "not reasonably debatable." R&R at 32. The R&R specifically stated that the record failed to disclose any evidence that (i) the judge, as the trier-of-fact in Petitioner's bench trial, was biased against Petitioner, (ii) Petitioner's claim of involuntary waiver of jury trial lacked merit, (iii) Petitioner's claims for relief related to the admission of hearsay testimony raised issues of state law that was not cognizable on habeas review, and (iv) Petitioner's ineffective assistance of counsel claims lacked merit as Petitioner could not establish either prong under Strickland. Having considered the matter on de novo review, the Court concludes that Petitioner has failed to make a substantial showing

of the denial of a constitutional right and a certificate of appealability is not warranted in this case.

Accordingly, the Court overrules Petitioner's sixth objection.

### III. CONCLUSION

For the reasons explained above, the Court overrules Petitioner's objections (Dkt. 19), accepts and adopts the recommendation in the R&R (Dkt. 16), and denies Petitioner's amended habeas petition (Dkt. 8-1). In doing so, the Court declines to issue a certificate of appealability.

SO ORDERED.

Dated:  February 12, 2014                          s/Mark A. Goldsmith
       Flint, Michigan                              MARK A. GOLDSMITH
                                                  United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 12, 2014.

                                     s/Deborah J. Goltz
                                     DEBORAH J. GOLTZ
                                     Case Manager